# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS COOPER, | ) | CASE NO. 5:14-cv-1750 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GREEN TREE SERVICING, LLC, et al., | ) | **AND ORDER** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is the motion filed by defendant Green Tree Servicing, LLC ("Green Tree") to dismiss plaintiff's amended complaint. (Doc. No. 15 ["Mot."].) Plaintiff filed a response in opposition (Doc. No. 16 ["Opp'n"]) and Green Tree filed a reply (Doc. No. 18 ["Reply"]). For the reasons set forth herein, the motion is granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2014, plaintiff filed his complaint against defendants Green Tree and Equifax Information Services, LLC. After Green Tree filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (*see* Doc. No. 11), plaintiff filed his amended complaint (Doc. No. 12 ["Compl."]), as permitted by Fed. R. Civ. P. 15(a)(1)(B). Green Tree then filed the instant motion to dismiss the amended complaint.[1] Since this motion renders the original motion to dismiss moot, Doc. No. 11 is denied. The facts underlying the dispute are as follows.[2]

---

[1] Equifax has not joined in this motion; rather, it has filed an answer to the amended complaint. (Doc. No. 19.) The amended complaint is pled in four counts. Equifax and Green Tree are both named in the first count under the Fair Credit Reporting Act; the remaining three counts are against Green Tree only.

[2] Green Tree attaches to its motion some, but not all, of the documents referenced in the amended complaint, none of which were attached thereto. Green Tree asks that the Court "take judicial notice" of these documents. The Court

Plaintiff alleges that he obtained a loan "labeled as a Home Equity Line of Credit as the 20 percent part of an 80/20 origination." (Compl. ¶ 6.)[3] Although he does not state when the loan was obtained, it appears from the materials submitted by Green Tree that it was on or about September 15, 2005. (*See* Mot., Exs. A and B.) Plaintiff alleges that he never drew on the line of credit during the initial draw period of five years and that period was not extended by the lender. Therefore, "as of 2010, this loan had essentially converted into a closed end loan." (Compl. ¶ 6.)

As is common, plaintiff's loan changed hands over the course of time and, eventually, servicing was transferred to Green Tree from the then-current holder, Bank of America. (Compl. ¶ 7; Mot., Ex. C.) According to the complaint, Green Tree is a "debt collector," a "servicer," and a "furnisher" of credit information, within the meaning of the various relevant statutes. (Compl. ¶¶ 4, 7.)

Plaintiff alleges he learned of the transfer to Green Tree when he received a "goodbye letter" from Bank of America on or about March 12, 2012. This letter allegedly

construes this as a request to consider the documents without converting the motion to dismiss into a motion for summary judgment. That request is granted since, in ruling on a motion to dismiss under Fed. R. Civ. P. 12, a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). That said, the Court has no assurance that these are the correct documents or *all* the documents. Plaintiff has proffered no assistance in this regard.

[3] The complaint is very unclear regarding the contours of the loan at issue. In particular, it is not clear whether this lawsuit involves only the 20% portion of the 80/20 origination, or whether it also involves the 80%. As near as the Court can tell, from its independent research on the concept, an 80/20 loan is a means used to supply 100% of the purchase price of a home when most lenders are only willing to finance 80% of the home's purchase price. The borrower obtains a first loan on 80% of the purchase price, along with a second loan for 20% of the purchase price. The second loan serves as the down-payment on the home and allows the borrower to avoid having to purchase private mortgage insurance. Frequently, the second loan (the 20% one) is in the form of a home equity line of credit ("HELOC").

contained no address or contact information for Green Tree. (Mot., Ex. D; Reply, Ex. B.[4]) Plaintiff alleges that Green Tree did not send a welcome letter, as required by statute, until April 30, 2012. (Compl. ¶ 7.)

Plaintiff alleges that when the loan was transferred to Green Tree, it was not more than 30 days delinquent,[5] and that he tendered sufficient funds to bring it current on April 24, 2012, having obtained Green Tree's contact information through conversations with Bank of America. (*Id.*) Nonetheless, Green Tree allegedly improperly treated plaintiff's loan as "charged off"[6] as of April 1, 2012. (*Id. ¶* 8.)

Plaintiff alleges he sent a letter to Green Tree on April 24, 2012, which was both his "first dispute letter" and a "qualified written request" ("QWR") within the meaning of the relevant statutes. (*Id.* ¶ 9.) Green Tree allegedly did not respond, but "only continued harassing collection calls." (*Id.*)

Plaintiff claims that he tried unsuccessfully to obtain assistance from Green Tree through several phone conversations, and that he sent additional dispute letters/QWRs on May 29, 2012 and September 21, 2012. Green Tree nonetheless continued its collection efforts and continued to report to the credit bureaus that plaintiff's loan was charged off. (*Id.* ¶¶ 10-12.) Plaintiff's final dispute letter was sent in January 2014. (*Id.* ¶ 13.)

Plaintiff also alleges that in October 2012, he disputed the improper credit reporting information with all three credit reporting bureaus, including defendant Equifax. While

---

[4] The copy of the letter submitted with the motion was not complete. The complete copy was attached to Green Tree's reply brief as Ex. B. (Doc. No. 18-2.)

[5] This is one of the areas where the complaint is less than clear, in that plaintiff does not explain how delinquency could even be an issue, given that the loan was really a line of credit that he claims he never drew on. Undoubtedly, there is an explanation, but it is not apparent from the complaint or, for that matter, the briefing.

[6] *See In re Sears, Roebuck & Co. Sec. Litig.,* 291 F. Supp. 2d 722, 724 n. 2 (N.D. Ill. 2003) ("A 'charge-off' is a write-off of a delinquent balance as uncollectible.").

TransUnion and Experian allegedly removed the derogatory information, Equifax verified it as reported, which plaintiff alleges is an indication that Equifax had actually contacted Green Tree about the dispute. As of November 11, 2013, Green Tree continued to report that plaintiff's account was charged off and failed to report that the status was being disputed by plaintiff. (*Id.* ¶ 14.)

In November 2013, Equifax allegedly provided a consumer report to plaintiff's potential employer (a national mortgage servicer). Plaintiff claims he was initially offered a job at a salary range of $70,000 to $120,000, with incentives, but the job offer was withdrawn after the potential employer received the allegedly erroneous credit report. The employer allegedly told plaintiff that he could not work in the servicing industry with a charged-off mortgage account. (*Id.* ¶ 17.)

In December 2013, plaintiff escalated his dispute to the Consumer Financial Protection Bureau ("CFPB") and the Ohio Attorney General ("Ohio AG"). (*Id.* ¶ 18.) In response, Green Tree asserted that it reported the account as charged off because that is how it received it from Bank of America. (*Id.* ¶ 19.) But plaintiff alleges that neither Green Tree's pay history nor Bank of America's records support this assertion. (*Id.*) Green Tree continued to advise plaintiff that the only way to remove the loan from charge-off status, even if it had been improperly placed in that status, was for plaintiff to either pay in full or otherwise settle the account. (*Id.* ¶ 21.)

Plaintiff alleges that he has suffered significant economic damages, including a lost employment opportunity at a substantial salary, inability to obtain credit or to refinance his first and second mortgages (at a loss of at least $32,000 in additional interest), and inability to co-sign an auto loan due to the high interest rates that would have been required. He also alleges

4

additional non-economic damages, including loss of privacy, loss of reputation, embarrassment, marital strain, sleepless nights, anxiety, and reduction in enjoyment of life. (*Id.* ¶ 22.)

## II. DISCUSSION

### A. Standard on a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,

552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## B. Analysis

### 1.     *Count I: Fair Credit Reporting Act ("FCRA") Claim*

Under the FCRA, 15 U.S.C. § 1681, *et seq.*, a furnisher of credit information has a duty to furnish accurate information. 15 U.S.C. § 1681s-2(a). But, "consumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a CRA [consumer reporting agency]." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615-16 (6th Cir. 2012). "A private cause of action against a furnisher of information does not arise until a consumer reporting agency provides proper notice of a dispute." *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (per curiam) (citing *Boggio*). This is so because, although the FCRA "unquestionably creates a private right of action[]" against furnishers of credit information, it does so only as to "some, but not all, subsections of [15 U.S.C.] § 1681s-2." *Boggio*, 696 F.3d at 615. "Directly contacting the furnisher of credit information does not actuate the furnisher's obligation to investigate a complaint." *Brown*, 507 F. App'x at 547 (citing *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)).

Plaintiff contacted Green Tree directly, in writing, at least four times (*see* Compl. ¶¶ 9, 11, 12, 13); but Green Tree specifically points to ¶¶ 14, 33-34, and 42 of the complaint, in conjunction with the pleading requirements of *Trombly* and *Iqbal*, to argue that plaintiff has failed to plead facts to show that *any CRA* notified Green Tree that plaintiff was disputing his credit information. Green Tree further argues that these allegations are actually contrary to other allegations in ¶¶ 24 and 31-33 of the complaint relating to Equifax. Green Tree asserts that

plaintiff's allegations are based upon no more than assumptions and are inadequate to establish entitlement to a private right of action against Green Tree under the FCRA. It is Green Tree's view that, taking as true the allegations that Equifax made no investigation and merely "parroted" the furnisher's information, it follows that Equifax never gave notice to Green Tree of a dispute by the consumer.

In the alternative, Green Tree argues that plaintiff's claim under the FCRA is barred by the two-year statute of limitations, which runs from the date he discovered the alleged violation. 15 U.S.C. § 1681p ("An action to enforce any liability created under this subchapter may be brought … not later than the earlier off – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis of such liability; or (2) 5 years after the date on which the violation that is the basis for such liabililty occurs."). Green Tree asserts that, since plaintiff admits he sent his first dispute letter to Green Tree on April 24, 2012 (Compl. ¶ 9), the filing of his original complaint on August 8, 2014 was outside the limitations period.

In opposition to Green Tree's motion, plaintiff points to ¶ 14 of the complaint as sufficient support to draw the inference that "at least one of the three credit reporting agencies notified Green Tree of [p]laintiff's dispute." (Opp'n at 199.) Coupling the facts as alleged (i.e., that both TransUnion and Experian "remove[d] the derogatory information" and Equifax "verified" it) with the legal principle that "the Court may infer only lawful, statutorily required conduct by the CRAs[,]" *Fishback v. HSBC Retail Servs., Inc.*, 944 F. Supp. 2d 1098, 1113 (D.N.M. 2013), plaintiff asserts that he is entitled to an inference that, in order to take the actions they did take with respect to his credit report, the CRAs (or at least one of them) had to have notified Green Tree of the dispute, as they are required to do under the law. *See* 15 U.S.C. § 1681i(a)(2).

7

With respect to Green Tree's argument that the FCRA claim is time-barred, plaintiff argues that Green Tree "has misread" the factual allegations. Plaintiff asserts that the letter sent to Green Tree on April 24, 2012 was only a QWR challenging the charge-off of his loan; it was not a dispute letter because it "made no mention of his credit." (Opp'n at 200.) He claims that he never disputed his credit until October 2012. (*Id.*)

The Court concludes, applying reasonable inferences in plaintiff's favor, that the allegations, specifically those in ¶¶ 14 and 42, are sufficient to meet the notice requirements of Rule 8, without offending the plausibility requirements of *Twombly* and/or *Iqbal*. As pointed out some years ago by the Seventh Circuit, there is "a practical reason for not requiring the plaintiff to [explicitly] allege that the CRA notified the furnisher: the CRA is not required to notify the consumer that it has contacted the furnisher, and, thus, 'a consumer may not, at the time of filing a complaint, be in a position to allege that notification.'" *Fishback v. HSBC Retail Servs., Inc.*, 944 F. Supp. 2d 1098, 1109 (D.N.M. 2013) (quoting *Lang v. TCF Nat'l Bank*, 249 F. App'x 464, 466 (7th Cir. 2007)). It can be inferred from the allegations in the complaint that at least one of the CRAs reported a dispute to Green Tree. It need not have been Equifax who made the report; therefore, the allegations in the complaint that Equifax never performed an investigation, or performed a shoddy one, are not necessarily in conflict with an inference that one of the CRAs contacted Green Tree.

As to the timeliness of the FCRA claim, the Court rejects Green Tree's argument that the claim is time-barred. First, the Court notes that a statute of limitations defense is proper grounds for dismissal under Rule 12(b)(6) only "'when it is apparent from the face of the complaint that the time limit for bringing the claim has passed.'" *Korn v. Paul Revere Life Ins. Co.*, 238 F. App'x 109, 111-12 (6th Cir. 2007) (quoting *Hoover v. Langston Equip. Assoc., Inc.*,

958 F.2d 742, 744 (6th Cir. 1992)). Green Tree asserts that plaintiff's discovery of the violation was at least as early as April 24, 2012 when, according to the complaint, he sent his first dispute letter/QWR to Green Tree. This view is incorrect.

The statute sets the limitations period as "2 years after the date of discovery by the plaintiff *of the violation that is the basis for such liability*[.]" 15 U.S.C. § 1681p(1) (emphasis added). Even assuming Green Tree received a letter from plaintiff in April 2012, it had no statutory obligation to do anything in response. Even if it did fail to act, that would not have been a "violation" giving rise to any liability. Liability on the part of Green Tree would arise only after it was notified by a CRA of a dispute by the plaintiff (*see* 15 U.S.C. § 1681i(a)(2)), and then failed to conduct the investigation required by 15 U.S.C. § 1681s-2(b)(1) within the 30-day time limit set by that statute (by way of reference to the time limit in § 1681i(a)(1)). Since the complaint alleges that plaintiff notified the CRAs "on or about October of 2012," (Compl. ¶ 14), even assuming the earliest possible date in October 2012, there would be no violation until 30 days later, at the earliest, November 1, 2012. Plaintiff filed his complaint in August 2014. It is not "apparent from the face of the complaint that the time limit for bringing the claim has passed."

For the above reasons, Green Tree's motion to dismiss the FCRA claim is denied.

## 2. *Count II: Fair Debt Collection Practices Act ("FDCPA") Claim*

In Count II, plaintiff alleges various violations by Green Tree of the FDCPA, 15 U.S.C. § 1692, *et seq.* (*See* Compl. ¶ 45.) In summary, he alleges that, after he disputed the status of his loan several times, Green Tree continued its collection practices, continued reporting inaccurate information to the CRAs with respect to the status of his account, and continued making harassing telephone calls. Plaintiff alleges that, although he has brought his account

current, due to Green Tree's improper servicing of his loan, he is "stuck in the charged off department[.]" (Compl. ¶ 48.)

Under the FDCPA, "within one year from the date on which the violation occurs[,]" 15 U.S.C. § 1692k(d), a plaintiff may bring a civil action against a debt collector who engages in "abusive debt collection practices[.]" 15 U.S.C. §§ 1692(e). The term "debt collector" is statutorily defined, in relevant part, as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. …

15 U.S.C. § 1692a(6).

Green Tree asserts that Count II is time-barred for failure to allege any violations of the act that occurred within one year of the August 8, 2014 filing of the complaint, i.e., violations occurring no earlier than August 7, 2013.[7] Green Tree argues that the complaint contains no specific dates for any alleged collection activity and that, notably, this deficiency was not corrected by the amended complaint after Green Tree filed its first motion to dismiss. In fact, in Green Tree's view, plaintiff's allegation that it improperly treated his loan as charged-off as of April 1, 2012 and continued to report it as such as of May of 2012 (Compl. ¶¶ 8, 11), makes it facially clear that the August 8, 2014 filing of the complaint was not timely.

Plaintiff's argument in opposition is to no avail. Pointing to October 16, 2013 and November 11, 2013 (Compl. ¶¶ 10, 14), and his incorporation by reference of "the foregoing as

---

[7] In its motion, Green Tree argued that the one-year period was to be counted back from the November 21, 2014 filing of the amended complaint. Plaintiff opposed on the ground that, under Fed. R. Civ. P. 15(c)(1)(B), he is entitled to relation back to his original complaint. Apparently recognizing its error, Green Tree argued in its reply that "any alleged collection activity by Green Tree which occurred before August 8, 2013 … cannot serve as a basis for an FDCPA violation claim or support a recovery as a matter of law." (Reply at 217.)

if fully rewritten" (Compl. ¶ 44),[8] along with a vague mention that Green Tree "has repeatedly called" plaintiff (*id.* ¶ 47), he argues that his allegations are sufficient to withstand dismissal. (Opp'n at 201.)

The Court rejects plaintiff's argument. Even drawing all inferences in plaintiff's complaint in his favor, accepting this argument to salvage Count II would stretch the rules of pleading well beyond their limits. It is plaintiff's burden to allege sufficient information in his complaint to permit defendant to defend against his claim under the FDCPA.

Defendant is entitled to dismissal of Count II because the complaint fails to allege any violations of the FDCPA by defendants within a year prior to its filing. The Court need not address Green Tree's additional arguments that it is not a "debt collector" as defined by the FDCPA and that the allegations in the complaint are a mere formulaic recitation of the elements.

### 3.     *Count III: Real Estate Settlement Procedures Act ("RESPA") Claim*

In Count III, plaintiff alleges violations of RESPA, 12 U.S.C. § 2601, *et seq.* He states that Green Tree, who is allegedly "a servicer of a 'federally related mortgage loan'" within the meaning of 12 U.S.C. § 2602(1) (Compl. ¶ 51), failed to properly respond to his three QWRs under 12 U.S.C. § 2605(e)(1)(B)(ii) and § 3500.12 of Regulation X (*id.* ¶¶ 52-53); continued to report to the three CRAs information on his credit report that he had disputed, in violation of 12

---

[8] Plaintiff's complaint is the prototypical "shotgun complaint," which is a complaint containing several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most (if not all) of the counts contain irrelevant factual allegations and legal conclusions. *See, e.g.*, *Joseph v. Bernstein*, No. 14-13989, 2015 WL 2190849, at *3 (11th Cir. May 12, 2015). These kinds of complaints have been universally rejected by courts, typically due to their failure to comply with the requirements of Fed. R. Civ. P. 10(b), which provides that claims should be in numbered paragraphs, "limited as far as practicable to a single set of circumstances." *Id.*; *see, e.g.*, *Trans Rail America, Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir. 2012) (upholding district court's dismissal of such a complaint, even as amended, because its "fatal flaw" was in failing to "tie any factual allegations to the alleged constitutional violations").

U.S.C. § 2505(e)(3) (*id.* ¶ 54); and failed to timely notify him of the servicing transfer from Bank of America to Green Tree, in violation of 12 U.S.C. § 2605(c)(2)(A) (*id.* ¶ 55).

Defendant asserts that the provisions of RESPA relating to notice of transfer and to responses to QWRs do not apply to plaintiff's open-end home equity line of credit, which is not, according to defendant, a "federally related mortgage loan." Defendant also argues that plaintiff did receive a notice of transfer, jointly sent by both Bank of America and Green Tree. (*See* Mot., Ex. D; Reply, Ex. B.)

A "federally related mortgage loan," as defined by RESPA, is "any loan … which is secured by a first or subordinate lien on residential real property … ." 12 U.S.C. § 2602(1)(A). The regulations governing mortgage servicing specifically state that "[m]ortage loan means any federally related mortgage loan, as that term is defined in § 1024.2, … but does not include open-end lines of credit (home equity plans)." 12 C.F.R. § 1024.31.[9]

This statute and regulation would seem to end the analysis. But, in opposition to defendant's motion, plaintiff argues that the language of the statute and the language of the regulation are in conflict and, therefore, the statute controls. He describes the conflict as follows: "RESPA mandates requirements for servicers of a loan secured by a first or subordinate lien on residential real property with regards to transferring loan servicing and receiving QWRs, while

---

[9] "Open-end credit" is defined as "consumer credit extended by a creditor under a plan in which: (i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. § 1026.2(a)(20). A HELOC is such an open-end credit line; it allows repeated borrowing against the equity in one's home over a specified period of time, up to a certain amount. This is in contrast to a closed-end transaction, where the borrower receives the entire loan amount upfront. The regulation has this less than helpful definition: "Closed-end credit means consumer credit other than 'open-end credit' as defined in this section." 12 C.F.R. § 1026.2(a)(10).

the regulation excludes subordinate liens and open-end lines of credit from having to abide by the regulations." (Opp'n at 204.)[10]

Plaintiff also argues in opposition (but not clearly as an alternative argument to his claim of conflict between the statute and the regulation) that, "[d]espite the label" on his loan, "the facts and circumstances surrounding it suggest it is more like a closed-end mortgage loan." (Opp'n at 205.) He argues that "[a]lthough the document stated that [he] could draw on the line of credit for five years, [he] never did." (*Id.*) "Further, as of [September or October of] 2010, the line of credit was ended and [plaintiff's] loan was treated as any other mortgage loan." (*Id.*) Without citing any authority in support, plaintiff asks the Court to "find" that his mortgage loan is not an open-end loan, despite its designation as such.

At this early stage of the proceedings, the Court finds that there may be factual matters that cannot be ascertained from the complaint and/or the parties' briefing. Although it is a close call, the Court concludes that Count III of plaintiff's complaint meets the pleading standards of Rule 8, *Twombly* and *Iqbal* because it places Green Tree on notice as to the claim plaintiff is advancing under RESPA, whether or not he is able to prevail on that claim. Defendant's arguments are better reserved for summary judgment, after discovery has fleshed out the record.

The Court also rejects defendant's alternative argument that plaintiff has failed to plead with specificity the predicate facts supporting his claims and has failed to attach copies of

---

[10] Plaintiff consistently refers to regulations in Title 24 of the Code of Federal Regulations (governing Housing and Urban Development ("HUD")), whereas defendant references regulations in Title 12 (governing Banks and Banking). The Dodd-Frank Act, enacted on July 21, 2010, established the CFPB. The CFPB consolidates most consumer financial protection authority in one place, including the former functions of HUD relating to RESPA. *See* 12 U.S.C. §§ 5491(a), 5581(b)(7). Plaintiff claims the predecessor regulations promulgated by HUD control his case because he sent his alleged QWRs before the new regulations were enacted. Defendant asserts in reply that plaintiff's RESPA claim fails under both sets of regulations and that any conflict between the regulations has been cured by Dodd-Frank. This, however, does not address plaintiff's argument that there is conflict between the statute and the regulations, rendering the regulations invalid, whichever applies.

supporting letters and other documents to his amended complaint. There is no requirement that documents be attached to a complaint, and the allegations, although slightly confusing, are sufficient to place defendant on notice of plaintiff's claim.

Without concluding that there is merit to Count III, a matter for another day, the Court does conclude that Count III withstands the motion to dismiss. To that extent, the motion is denied.

### 4.    *Count IV: Fraudulent Misrepresentation*

In Count IV of his complaint, plaintiff alleges that Green Tree knowingly made a false representation that he could not get his loan out of charge off/recovery even though the account was allegedly mistakenly placed in that status and despite the fact that the account was current. (Compl. ¶ 60.) He alleges Green Tree made such false representations with the intent that plaintiff would rely upon them and pay off his loan in full, resulting in additional profits to Green Tree. (*Id.* ¶ 61.)

The elements of a claim for fraudulent misrepresentation under Ohio law are:

> (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*HSBC Bank USA, Nat'l Trust Co. v. Teagarden*, 6 N.E.3d 678, 684 (Ohio Ct. App. 2013) (citation omitted). Under Fed. R. Civ. P. 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud[.]" These circumstances "normally include the time, place and content of the false representation, the fact misrepresented, and the nature of

what was obtained or given as a consequence of the fraud." *Baker v. Conlan*, 585 N.E.2d 543, 546 (Ohio Ct. App. 1990) (citation omitted).

Defendant argues that this claim fails to allege sufficient facts, with the requisite particularity, to state a claim for relief under Ohio law. (Mot. at 160.) In opposition, plaintiff argues: "It cannot be true that Green Tree does not have the ability to move a loan from one department to another. If it is true, then there are much bigger problems. The outrageousness of the statement led [p]laintiff to believe that Green Tree representatives knew that what they were telling [p]laintiff was false." (Opp'n at 208.)

Although, again, it is a close call, the Court concludes that this claim is pleaded with sufficient particularity to place Green Tree on notice of the nature of the claim. Plaintiff does sufficiently allege the "time, place, and content of the false representation" (i.e., in telephone calls to Green Tree between June 17, 2013 and October 13, 2013, when he was told that an improperly charged-off account could not be corrected by Green Tree (Compl. ¶ 16)), "the fact misrepresented" (i.e., that he had only two options: pay the entire balance or remain in collections until a settlement (*Id.* ¶¶ 16, 60)), and "the nature of what was obtained or given as a consequence of the fraud" (i.e., that, if plaintiff were to rely on the statement and pay off his entire balance, Green Tree would "make additional profits" (*Id.* ¶ 61)).

Defendant is not entitled to a Rule 12(b)(6) dismissal of Count IV. To that extent, the motion is denied.

## III. CONCLUSION

For the reasons discussed herein, defendant's Rule 12(b)(6) motion to dismiss (Doc. No. 15) is granted in part and denied in part. The earlier motion to dismiss (Doc. No. 11) is denied for record purposes. Count II of plaintiff's amended complaint is dismissed because it is time-barred. The case will proceed as to Count I, Count III, and Count IV.

The Court will, by separate order, schedule a Case Management Conference.


**IT IS SO ORDERED**.


Dated: August 27, 2015

                                  **HONORABLE SARA LIOI**
                                  **UNITED STATES DISTRICT JUDGE**

16